**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| DEBBIE'S STAFFING SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HIGHPOINT RISK SERVICES, LLC a/k/a | ) | 1:17CV657 |
| HIGHPOINT ADMINISTRATIVE | ) | |
| SERVICES, INC., COMPANION | ) | |
| PROPERTY AND CASUALTY | ) | |
| INSURANCE COMPANY n/k/a SUSSEX | ) | |
| INSURANCE COMPANY, and | ) | |
| CHARLES DAVID WOOD, JR., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a Motion to Dismiss [Doc. #19] and a

Motion to Strike [Doc. #27] by Defendants Highpoint Risk Services, LLC

("Highpoint") and Charles David Wood, Jr. (collectively "Defendants"). Defendants

have moved to dismiss the claims against them for lack of personal jurisdiction, or

in the alternative, for failure to state a claim for which relief can be granted, or in

the alternative, for improper venue. They have also moved to strike Companion

Property and Casualty Insurance Company's response to their motion to dismiss as

impermissible under the Local Rules. For the reasons explained below, the motion

to dismiss is granted, because the Court lacks personal jurisdiction over these two

Defendants. The motion to strike is denied.

I.

Plaintiff Debbie's Staffing Services, Inc. ("Debbie's Staffing"), a North Carolina corporation with its principal place of business in Winston-Salem, North Carolina, "is a staffing and personnel placement company engaged in the business of supplying human capital solutions to customers throughout the region, state, and nation." (Compl. ¶¶ 2, 8 [Doc. #1].)  Defendant Companion Property and Casualty Insurance Company n/k/a Sussex Insurance Company ("Companion"), and Dallas National Insurance Company ("DNIC"), who is not a party to this suit, served as workers' compensation insurance carriers for Debbie's Staffing in the states where it operated in 2012 through 2014. (Id. ¶¶ 11, 12.)  Because Debbie's Staffing selected a high deductible insurance policy, Companion and DNIC required it to deposit certain amounts of collateral funds with Highpoint, a Texas limited liability company with its principal place of business in Texas. (Id. ¶ 13.)  Highpoint, described as an agent and administrator for Companion and DNIC, collected premiums and collateral funds "on behalf of Companion and DNIC, representing that they would appropriately submit same to Companion and DNIC or safe guard same for the benefit of Companion and DNIC." (Id. ¶¶ 9, 10, 17.)  Debbie's Staffing submitted $804,467.67 in collateral funds "as directed by [Highpoint] and/or Companion", "some or all of" which Highpoint deposited into trust accounts under Companion's possession and control. (Id. ¶¶ 18, 19.)  These funds were to be used "in the event that Debbie's Staffing defaulted or otherwise failed to fulfill its obligation under the" insurance policies. (Id. ¶ 14.)

2

Debbie's Staffing believes that none of the collateral funds were used and has demanded their return from Highpoint, Companion, and DNIC pursuant to the terms of the insurance policies "and contracts". (Id. ¶¶ 14, 24, 25.)  However, Companion and Highpoint "have effectively claimed that the funds are in the possession of the other or that they are not in possession of the funds." (Id. ¶ 33.)  As a result, Debbie's Staffing has sued Companion and Highpoint[1] for breach of contract, conversion, unjust enrichment, and breach of fiduciary duty and seeks a declaratory judgment and constructive trust. (Id. ¶¶ 33-58.)  Debbie's Staffing has sued Wood, a citizen and resident of Texas who owns all interest in Highpoint and is its only member, hoping to pierce Highpoint's corporate veil. (Id. ¶ 3.)  Highpoint and Wood challenge this court's jurisdiction over them.  Because it is determined the Court has no personal jurisdiction over Highpoint and Wood, their other bases upon which to dismiss the claims against them are not addressed.

II.

When a defendant asserts a Rule 12(b)(2) challenge to a court's personal jurisdiction, the question is one for the court and the plaintiff bears the burden to prove the existence of a ground for personal jurisdiction. Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989).  The burden "varies according to the posture of a case and the evidence that has been presented to the court." Grayson v.

---

[1] Debbie's Staffing has not sued DNIC.  It is alleged to have been sold in 2013 and come under the supervision of the Delaware Department of Insurance in 2014 which elected to liquidate it. (Compl. ¶ 30.)  Debbie's Staffing has made a claim with the receiver. (Id.)

<u>Anderson</u>, 816 F.3d 262, 268 (4th Cir. 2016).  Ultimately, a plaintiff must prove

the existence of a ground for jurisdiction by a preponderance of the evidence. <u>Id.</u>

(citing <u>Combs</u>, 886 F.2d at 676).  However, when, as here, the court addresses

the question of personal jurisdiction on the basis of the motion papers, supporting

legal memoranda, relevant allegations of the complaint, and, if provided, supporting

evidence,[2] the plaintiff has the burden of making a prima facie showing in support

of jurisdiction. <u>Id.</u> (citing <u>Combs</u>, 886 F.2d at 676); <u>Universal Leather, LLC v. Koro</u>

<u>AR, S.A.</u>, 773 F.3d 553, 558 (4th Cir. 2014).

A plaintiff makes a prima facie showing in this context when it "present[s]

evidence sufficient to defeat a motion for judgment as a matter of law." <u>In re</u>

<u>Polyester Staple Antitrust Litig.</u>, No. 3:03CV1516, 2008 WL 906331, at *7

(W.D.N.C. Apr. 1, 2008) (quoting <u>Reese Bros., Inc. v. U.S. Postal Serv.</u>, 477 F.

Supp. 2d 31, 36 (D.D.C. 2007)); <u>see also</u> <u>Mattel, Inc. v. Greiner & Hausser GmbH</u>,

354 F.3d 857, 862 (9th Cir. 2003) <u>cited in</u> <u>Universal Leather</u>, 773 F.3d at 561

(stating that a plaintiff makes a prima facie showing of personal jurisdiction by

presenting facts that, if true, would support jurisdiction).  Stated another way, a

plaintiff makes a prima facie showing when there is evidence which a reasoning

mind could accept as sufficient to support the proposition in question.

Absent an evidentiary hearing, the court "must construe all relevant pleading

allegations in the light most favorable to the plaintiff, assume credibility, and draw

---

[2] "[A] court has broad discretion to determine the procedure that it will follow in
resolving a Rule 12(b)(2) motion." <u>Grayson</u>, 816 F.3d at 268.

the most favorable inferences for the existence of jurisdiction." <u>Combs</u>, 886 F.2d at 676; <u>see also</u> <u>Universal Leather</u>, 773 F.3d at 560 (requiring the court to assume the plaintiff's version of the facts is credible and to construe any conflicting facts in the affidavits in the light most favorable to the plaintiff). However, "[t]he allegations of the complaint are taken as true only if they are not controverted by evidence from the defendant," <u>Vision Motor Cars, Inc. v. Valor Motor Co.</u>, 981 F. Supp. 2d 464, 468 (M.D.N.C. 2013) (citing <u>Wolf v. Richmond Cty. Hosp. Auth.</u>, 745 F.2d 904, 908 (4th Cir. 1984)), which is the situation here as Defendants have presented argument without evidence.[3]

A federal court may exercise personal jurisdiction over a non-resident defendant only if the forum state's long-arm statute authorizes the exercise of jurisdiction and the exercise of jurisdiction comports with Fourteenth Amendment due process requirements. <u>Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan</u>, 259 F.3d 209, 215 (4th Cir. 2001). North Carolina's long-arm statute, General Statute § 1-75.4, "is designed to extend jurisdiction over nonresident defendants to the fullest limits permitted by the Fourteenth

---

[3] Nevertheless, Debbie's Staffing has submitted its own evidence in further support of the exercise of personal jurisdiction over Defendants. (<u>See</u> Exs. A-N to Resp. [Docs. #22-1 to #22-14].) Many of those exhibits are cited in this Memorandum Opinion and Order. However, several of the exhibits do not appear to be germane to the question of personal jurisdiction in light of Debbie's Staffing's allegations and argument. For example, Debbie's Staffing is seeking to hold Wood liable only for <u>Highpoint's</u> conduct by piercing only <u>its</u> corporate veil. Yet, it attaches DNIC's Texas Articles of Incorporation, Texas Franchise Tax Public Information Report, and Texas Business Organizations Inquiry, (Exs. C-E), to show that Wood served on its board of directors and was its owner and president, (Resp. at 3).

Amendment's due-process clause." Church v. Carter, 380 S.E.2d 167, 169 (N.C. Ct. App. 1989); see also Christian Sci. Bd. of Dirs., 259 F.3d at 215 (stating the same). Thus, the court's focus becomes whether the plaintiff has made a prima facie showing that the defendant's contacts with North Carolina satisfy constitutional due process. Universal Leather, 773 F.3d at 558-59. Due process allows a court to exercise general or specific jurisdiction over a defendant.

A.

Defendants first argue that neither Debbie's Staffing's allegations nor supporting evidence permits the Court to exercise general jurisdiction over them. General jurisdiction exists over a foreign corporate defendant when its "continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." Int'l Shoe Co. v. Washington, 326 U.S. 310, 318 (1945); see also Helicopteros Nactionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.9 (1984) ("When a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State has been said to be exercising 'general jurisdiction' over the defendant."). General jurisdiction requires a foreign defendant's "affiliations with the State [to be] so 'continuous and systematic' as to render [it] essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (citing Int'l Shoe Co., 326 U.S. at 317). "The 'paradigm' forums in which a corporate defendant is 'at home,' . . . are the corporation's place of incorporation

and its principal place of business." <u>BNSF Ry. Co. v. Tyrrell</u>, ___ U.S. ___, 137 S. Ct. 1549, 1558 (2017) (citing <u>Daimler AG v. Bauman</u>, 571 U.S. 117, ___, 134 S. Ct. 746, 761 n.19 (2015)).  Similarly, "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile". <u>Goodyear Dunlop Tires Operations, S.A.</u>, 564 U.S. at 924.  The Supreme Court has recognized the possibility of an exceptional case, though, like <u>Perkins v. Benguet Consol. Mining Co.</u>, 342 U.S. 437 (1952), where the war forced the defendant to relocate temporarily from the Philippines to Ohio such that Ohio became "the center of the corporation's wartime activities" and suit was proper there. <u>BNSF Ry. Co.</u>, 137 S. Ct. at 1558.

## 1.

It is clear that Highpoint is neither incorporated nor maintains its principal place of business in North Carolina.  Furthermore, neither the allegations in the Complaint, (<u>see</u> Compl. ¶ 6 (alleging that "representatives of Defendants [including Companion] traveled to North Carolina in furtherance of relationships with . . . other clients with operations or domicile in North Carolina")), nor any evidence Debbie's Staffing has provided in response to Defendants' motion, (<u>see</u> Highpoint Application & Annual Reports, Ex. F to Resp. [Doc. #22-6]), classify this case as an exceptional one.  Long-standing precedent forecloses Debbie's Staffing's argument that general jurisdiction exists over Highpoint in North Carolina because of its Certificate of Authority and registered agent. <u>See</u> <u>Public Impact, LLC v. Boston Consulting Grp, Inc.</u>, 117 F. Supp. 3d 732, 738 (M.D.N.C. 2015).  In

Ratliff v. Cooper Laboratories, Inc., 444 F.2d 745, 748 (1971), the Fourth Circuit

Court of Appeals explained,

> We think the application to do business and the appointment of an
> agent for service to fulfill a state law requirement is of no special
> weight . . . .  Applying for the privilege of doing business is one thing,
> but the actual exercise of that privilege is quite another.  The
> principles of due process require a firmer foundation than mere
> compliance with the state domestication statutes.

See also Public Impact, LLC, 117 F. Supp. 3d at 738 (citing district courts within

the Fourth Circuit applying Ratliff and finding that circuit law "forecloses Public

Impact's argument that this court has general jurisdiction over BCG because it is

registered to do business in this State").  Highpoint simply does not have

continuous and systematic affiliations with North Carolina that render it at home in

the state.

2.

The same is true for Wood.  He is domiciled in Texas and is not alleged to

have taken actions that constitute continuous and systematic affiliations with

North Carolina.  The general allegation that "representatives of Defendants" – as

used in the Complaint, this includes all three defendants – "upon information and

belief" "traveled to North Carolina in furtherance of relationships with . . . other

clients with operations of domicile in North Carolina" cannot sustain the exercise of

general jurisdiction over Wood. See Vision Motor Cars, Inc. v. Valor Motor Co.,

981 F. Supp. 2d 464, 471 (M.D.N.C. 2013) (refusing to consider conclusory

allegations that made "few specific factual assertions as to any particular defendant's contacts with North Carolina").

In response to Defendants' motion, Debbie's Staffing provided evidence that, as Highpoint's sole member and manager, Wood applied for Highpoint's Certificate of Authority, filed its annual reports, and withdrew its Certificate of Authority. (Highpoint Texas Articles of Organization, Ex. A to Resp. [Doc. #22-1], Highpoint Texas Business Inquiry, Ex. B to Resp. [Doc. #22-2], Highpoint Application & Annual Reports.)  He also applied for a Certificate of Authority on behalf of AMS Staff Leasing, Inc. and filed its annual reports for approximately nine years as its sole member. (AMS Staff Leasing, Inc. Application & Annual Reports, Ex. G to Resp. [Doc. #22-7].)  However, "[g]eneral actions by [an officer] on behalf of the corporation will not generally subject [him] to an out-of-state court's jurisdiction." AARP v. Am. Family Prepaid Legal Corp., Inc., 604 F. Supp. 2d 785, 799 (M.D.N.C. 2009) (quoting Mkt. Am. v. Optihealth Prods., Inc., No. 1:07CV855, 2008 WL 5069802, at *8 (M.D.N.C. Nov. 21, 2008), adopted, (M.D.N.C. Jan. 6, 2009)).  As with Highpoint, Wood cannot be found to be at home in North Carolina.  Therefore, the Court cannot exercise general jurisdiction over either Highpoint or Wood.

B.

Defendants next argue that neither Debbie's Staffing's allegations nor supporting evidence permit the Court to exercise specific jurisdiction over them. "Specific jurisdiction is very different" from general jurisdiction. Bristol-Myers

Squibb Co. v. Superior Ct. of Cal., San Francisco Cty., ___ U.S. ___, 137 S. Ct. 1773, 1780 (2017).  It exists when the forum state exercises personal jurisdiction over the defendant "in a suit arising out of or related to the defendant's contacts with the forum[.]" Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 414 n.8.  "[T]here must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" Bristol-Myers Squibb Co., 137 S. Ct. at 1780 (quoting Goodyear, 564 U.S. at 919).  "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." Id. at 1781 (citing Goodyear, 564 U.S. at 931 n.6.)

To exercise specific jurisdiction over a defendant, due process requires that the court examine "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009) (quoting ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002)). This assessment must be made as to each defendant individually. Calder v. Jones, 465 U.S. 783, 790 (1984).

The inquiry into "purposeful availment . . . is grounded on the traditional due process concept of 'minimum contacts[.]'" Universal Leather, 773 F.3d at 559. "Jurisdiction is proper . . . where the contacts proximately result from actions by

the defendant <u>himself</u> that create a 'substantial connection' with the forum State."

<u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985) (quoting <u>McGee v. Int'l Life Ins. Co.</u>, 355 U.S. 220, 223 (1957)).  The "analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." <u>Walden v. Fiore</u>, ___ U.S. ___, 134 S. Ct. 1115, 1122 (2014).  "[T]he plaintiff cannot be the only link between the defendant and the forum." <u>Id.</u>  "Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." <u>Id.</u>  At its heart, the question is "whether the defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there." <u>Universal Leather, LLC</u>, 773 F.3d at 559 (citation omitted) (alteration in original).  "Due process requires that a defendant be haled into court in a forum State based on his own affiliations with the State, not based on 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." <u>Walden</u>, 134 S. Ct. at 1123.

In the business context, courts analyze "various nonexclusive factors" to determine if a defendant has purposefully availed itself of the privilege of conducting activities in the state, including, but not limited to:

- whether the defendant maintains offices or agents in the forum state,
- whether the defendant owns property in the forum state,
- whether the defendant reached into the forum state to solicit or initiate business,
- whether the defendant deliberately engaged in significant or long-term business activities in the forum state,

- whether the parties contractually agreed that the law of the forum state would govern disputes,
- whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship,
- the nature, quality and extent of the parties' communications about the business being transacted, [and]
- whether the performance of contractual duties was to occur within the forum[.]

Consulting Eng'rs Corp., 561 F.3d at 278 (citations omitted).  Although several of these factors involve the physical presence of a defendant in a forum state, "[s]o long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, [the Supreme Court has] consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." Burger King Corp., 471 U.S. at 475.  On the other hand, "the Fourth Circuit has given great weight to the question of who initiated the contact between the parties." Pan-Am. Prods. & Holdings, LLC v. R.T.G. Furniture Corp., 825 F. Supp. 2d 664, 682 (M.D.N.C. 2011); see also Universal Leather, LLC, 773 F.3d at 562 (noting that "the fact that a defendant initiated contact with the plaintiff in the forum state and repeatedly reached into the forum state to transact business during in-person visits there" "significantly" impacted the personal jurisdiction analysis) (internal quotations omitted).

A resident's contract with a non-resident defendant is not by itself sufficient to establish sufficient minimum contacts with the forum state. Burger King Corp., 471 U.S. at 478.  Because the contract is "but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the

real object of the business transaction[,]" a court must evaluate "prior negotiations[,] contemplated future consequences, . . . the terms of the contract[,] and the parties' actual course of dealing[.]" Id. at 479.

The Fourth Circuit has "generally . . . concluded that a foreign corporation has purposefully availed itself of the privilege of conducting business in the forum state when the defendant 'substantially collaborated with a forum resident and that joint enterprise constituted an integral element of the dispute.'" Universal Leather, LLC, 773 F.3d at 560 (quoting Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd., 682 F.3d 292, 302 (4th Cir. 2012)). On the other hand, the Fourth Circuit has "typically . . . found such purposeful availment lacking in cases in which 'the locus of the parties' interaction was overwhelmingly abroad.'" Id. (quoting Tire Eng'g & Distrib., LLC, 682 F.3d at 302).

Only after the plaintiff makes a prima facie showing of purposeful availment does the court need to evaluate the two remaining prongs of the jurisdictional analysis: whether the defendant's contacts with the forum state form the basis of the suit and whether other considerations confirm the appropriateness of the forum such as the burden on the defendant, the interest of the forum state in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the shared interests in obtaining efficient resolution, and the interests of the states in furthering substantive social policies. Consulting Eng'rs, 561 F.3d 278-79.

1.

Debbie's Staffing has alleged generally that "Defendants" – as used in the Complaint, this refers to all three defendants – "purposely availed themselves of North Carolina's laws and regulation by doing business with Debbie's Staffing and subjected that business to North Carolina law", they "entered into contracts to conduct business with Debbie's Staffing", their representatives "traveled to North Carolina in furtherance of relationships with Debbie's Staffing", and they "sent various communications and documents to Debbie's Staffing in Winston-Salem, North Carolina in furtherance of their business with Debbie's Staffing." (Compl. ¶ 6.)

More specifically, Debbie's Staffing alleges that Companion and DNIC "required [it] to deposit certain amounts of collateral funds with [Highpoint]." (Id. ¶ 13.) Companion and DNIC used Highpoint as their administrator to collect payments during the years 2012 through 2014 and, "[a]s a result", Debbie's Staffing and Highpoint entered an oral contract according to which Highpoint collected collateral funds "on behalf of Companion and DNIC" and represented it would "appropriately submit same to Companion and DNIC or safe guard same for [their] benefit". (Id. ¶¶ 9, 10.) To facilitate these payments, Highpoint sent Debbie's Staffing documents on Companion and DNIC letterhead according to which each company "required Debbie's Staffing to deposit collateral funds as part of the workers' compensation insurance policies that each company underwrote". (Id. ¶¶ 15, 16.) Companion and DNIC each instructed Debbie's Staffing to make

checks payable to Highpoint and mail them to a Florida address belonging to Companion or All Insurance Underwriters, Inc., respectively. (Id. ¶ 16.)

For the policy year 2012-2013, Debbie's Staffing made required collateral funds payments by wire transfer to Highpoint on September 12, 2012 for $75,000, September 24, 2012 for $75,000, September 25, 2012 for $25,000, September 26, 2012 for $50,000, October 10, 2012 for $75,000, and October 24, 2012 for $75,000. (Id. ¶ 20.)  Debbie's Staffing also made a wire transfer on October 17, 2012 for $75,000 to International Facilities Insurance Services, but its relationship, if any, to Highpoint is not alleged. (Id.)  For the policy year 2013-2014, Debbie's Staffing made a required collateral funds payment by check to Highpoint on April 16, 2013 for $87,801. (Id. ¶ 21.)  All other payments for that policy year were made to Companion. (Id.)

In response to Defendants' motion, Debbie's Staffing argues that "Defendants served as [its] insurance agency, producer and claims reporter" and "were to provide workers' compensation and employer's liability insurance for approximately twelve North Carolina locations of operations." (Resp. at 7 (citing Exs. H & I to Resp.).)  Exhibit H is a compilation of the workers' compensation policy for April 2012 through April 2013 from Companion for operations in Georgia, Texas, and Virginia which identifies Highpoint as the "Agency" and the workers' compensation policy for July 2013 through July 2014 from DNIC for operations in Alabama, Iowa, Massachusetts, North Carolina, Pennsylvania, and Rhode Island which identifies Highpoint as the "Producer" and lists twelve North

Carolina locations of Debbie's Staffing operations.  Exhibit I is a quote from R-T Workers' Comp Specialty, LLC, a Division of International Facilities Insurance Services, Inc., for coverage by DNIC, identified as the "Carrier", through Northern Capital Insurance Group, identified as "Agency", which gives the name of Highpoint, along with its contact information, for claims reporting.

Debbie's Staffing further argues that Highpoint solicited payments from and provided wire instructions to Debbie's Staffing. (Resp. at 7 (citing to Exs. J & K to Resp.).)  Exhibit J is a Request to Bind Form authorizing Highpoint to make automatic drafts from April 2012 through April 2013, and Exhibit K consists of invoices from Highpoint dated September 11, 2012 for $18,355, September 18, 2012 for $9,138.48, and September 25, 2012 for $6,701.72 and $4,800. Consistent with instructions from Companion and DNIC to make checks payable to Highpoint, Debbie's Staffing made multiple collateral payments to Highpoint. (Resp. at 7 (citing Exs. L (same as Ex. A to Compl.) & M (bank records mirroring the allegations in ¶¶ 20, 21 of Compl.) to Resp.).)  As a result, "Defendants accepted $804,467.67 from Debbie's [Staffing] as its insurance agency." (Resp. at 7.)

While there is certainly evidence that Highpoint did business with Debbie's Staffing, neither the allegations nor the evidence support a prima facie showing that Highpoint purposely availed itself of the privilege of conducting business in North Carolina such that it should have reasonably anticipated being haled into court in the state.  There is no allegation or evidence that Highpoint initiated the contact with Debbie's Staffing, the factor given great weight.  Instead, the

16

allegations and evidence are that Debbie's Staffing received workers'
compensation insurance coverage from Companion and DNIC who used Highpoint
as their administrator for collecting premiums and collateral funds and who directed
Debbie's Staffing to deposit funds with Highpoint. "As a result" of that, Debbie's
Staffing and Highpoint entered into an oral contract. Furthermore, there is no
allegation or evidence that Highpoint maintains offices or agents in North Carolina
or owns property in the state. Nor is there an allegation or evidence that it
reached into North Carolina to solicit or initiate business or deliberately engaged in
long-term business activities in the state. Likewise, there is no allegation or
evidence that the oral contract into which Debbie's Staffing and Highpoint entered
was to be governed by North Carolina law. There is no evidence that Highpoint
made any in-person contact with a North Carolina resident in North Carolina
regarding a business relationship, and the only allegation that "representatives of
Defendants" did so is too general and conclusory.

On the other hand, there are allegations and evidence that Highpoint
conducted business in North Carolina, but it cannot be described as having
deliberately engaged in significant business in the state. The minimum contacts
analysis of Highpoint's contacts must focus on its contacts with the state, not its
contacts with Debbie's Staffing which happens to reside in the state. Yet, the
allegations and evidence show that Highpoint's contacts are with Debbie's Staffing
and are not purposely directed at North Carolina. Highpoint sent Debbie's Staffing
instructions for making payments, a request for authorization to conduct automatic

drafts, and four invoices in September 2012 seeking $38,995.20.  It received from

Debbie's Staffing six wire transfers in 2012 and one check, mailed to a Florida

address, in 2013, totaling $462,801.20.  These exchanges do not show Highpoint

deliberately engaging in significant business in North Carolina.

The allegations and evidence of the nature, quality, and extent of the

communications between Debbie's Staffing and Highpoint about the business

being transacted does not provide additional support.  "Companion and DNIC

required Debbie's Staffing to deposit certain amounts of collateral funds with

[Highpoint]" and, on their respective company letterhead, instructed Debbie's

Staffing to make checks payable to Highpoint and mail them to a Florida address.

Highpoint sent to Debbie's Staffing those instructions, an automatic draft

authorization form, and four invoices.  In turn, Debbie's Staffing sent to Highpoint

six wire transfers and one check.

Nothing here shows that Highpoint purposely directed its activities at the

state of North Carolina.  Instead, it shows that Highpoint's contacts with the state

arise merely because Debbie's Staffing, an insured of Companion and DNIC, is

located in North Carolina.  While Debbie's Staffing sent payments to Highpoint as

directed by Highpoint and Companion, Highpoint was to submit the collateral funds

to Companion and DNIC or safeguard and deposit them in trust accounts under the

possession and control of Companion.  Highpoint's obligations are not alleged or

evidenced to have occurred in North Carolina.  In sum, it does not have the

constitutionally required minimum contacts with North Carolina to support the exercise of specific jurisdiction.

Debbie's Staffing makes an alternative argument in support of specific jurisdiction by contending that because its claims of conversion[4] and breach of fiduciary duty are torts, jurisdiction may be exercised over Highpoint because it intentionally directed its wrongdoing at a North Carolina resident. (Resp. at 8-9 (citing AARP, 604 F. Supp. 2d at 799).) AARP, a case involving trademark, RICO, and Lanham Act allegations, cited Calder, 465 U.S. at 790, for the proposition that "[w]here an allegation sounds in tort, a court may exercise jurisdiction over a non-resident defendant who is a 'primary participant[] in an alleged wrongdoing intentionally directed' at a resident in the forum state." 604 F. Supp. 2d at 799. As the Supreme Court has explained, "[t]he crux of Calder was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff." Walden, 134 S. Ct. at 1123-24. "[B]ecause publication to third persons is a necessary element of libel, . . . the defendants' intentional tort actually occurred in California." Id. at 1124.

The Fourth Circuit has recognized that this "effects test" of specific jurisdiction requires the plaintiff to establish that the defendant committed an intentional tort, the plaintiff felt the brunt of the harm in the forum state such that it can be said to be the focal point of the harm, and the defendant expressly aimed

---

[4] Conversion is an intentional tort. Kawai Am. Corp. v. Univ. of N.C. at Chapel Hill, 567 S.E.2d 215, 218 (N.C. Ct. App. 2002).

his tortious conduct at the forum such that it can be said to be the focal point of the tortious activity. Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 398 n.7 (4th Cir. 2003). "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." Walden, 134 S. Ct. at 1125; see also ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 626 (4th Cir. 1997) ("Although the place that the plaintiff feels the alleged injury is plainly relevant to the inquiry, it must ultimately be accompanied by the defendant's own contacts with the state if jurisdiction over the defendant is to be upheld."). Therefore, "[t]he proper focus of the 'minimum contacts' inquiry in intentional-tort cases is 'the relationship among the defendant, the forum, and the litigation.'" Walden, 134 S. Ct. at 1126 (quoting Calder, 465 U.S. at 788).

Here, Debbie's Staffing has alleged that Highpoint is liable for the intentional tort of conversion, and it is reasonable to infer that it has suffered the brunt of the harm in North Carolina where it is incorporated and maintains its principal place of business. However, there is neither allegation nor evidence that Highpoint intentionally aimed this tortious conduct at North Carolina such that North Carolina can be said to be the focal point of the tortious activity. Instead, the focal point of the conversion is outside of North Carolina. At the instruction of Companion and DNIC, Debbie's Staffing sent payments to Highpoint – either through wire transfer to an unspecified location or by check to a Florida address – which deposited the funds into a trust account in an unspecified location under the possession and

control of Companion and has since refused to return the unused collateral funds to Debbie's Staffing, having converted the proceeds for its use. See Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC, 723 S.E.2d 744, 747 (N.C. 2012) (defining conversion as "an unauthorized assumption and exercise of the right of ownership over goods . . . belonging to another, to . . . the exclusion of an owner's rights"). As above, nothing before the Court supports a finding that Highpoint's alleged intentional tortious conduct created constitutionally sufficient minimum contacts with North Carolina to support the exercise of jurisdiction over it.

2.

While Debbie's Staffing argues that its "Complaint properly alleges that Wood, serving as sole owner and member of Highpoint, had knowledge of and participated in the improper activities of Highpoint that had an effect on the forum state", (Resp. at 8-9), the Complaint does no such thing. The allegations involving Wood are in support of piercing Highpoint's corporate veil to hold Wood liable for Highpoint's actions. He is alleged to be a citizen and resident of Texas, to have failed to observe corporate formalities in his operation of Highpoint, to have siphoned and comingled funds with Highpoint, to have caused Highpoint to be undercapitalized, to have failed to maintain separate corporate records for Highpoint, and to have operated Highpoint as a mere façade for his own activities. (Compl. ¶ 3.)

Assuming that Debbie's Staffing has sufficiently alleged facts in support of piercing Highpoint's corporate veil, doing so would not confer jurisdiction on Wood because the Court does not have jurisdiction over Highpoint in the first place. Cf. Pyrotek, Inc. v. Motionmaster, Inc., No. 1:04CV549, 2006 U.S. Dist. LEXIS 57007, at *15-20 (M.D.N.C. Feb. 22, 2006) (finding the corporation had sufficient minimum contacts for the exercise of jurisdiction then analyzing whether the plaintiff stated a claim for piercing the corporate veil that would confer jurisdiction over its president); Int'l Bancorp., L.L.C. v. Societe Des Baines De Mer Et Du Cercle Des Etrangers A Monaco, 192 F. Supp. 2d 467, 477 (E.D. Va. 2002) (recognizing "that piercing the corporate veil should be a permissible means of conferring jurisdiction in a forum over the alter ego of a company that is subject to jurisdiction in the forum").

A corporate officer who "actually commits a tort in the forum state", whether in his corporate or personal capacity at the time, may subject himself to personal jurisdiction in that state. See N.C. Mut. Life Ins. Co. v. McKinley Fin. Serv., Inc., 386 F. Supp. 2d 648, 655 (M.D.N.C. 2005) (citing Columbia Briargate Co. v. First Nat'l Bank, 713 F.2d 1052, 1064 (4th Cir. 1983)). But, Wood is neither alleged nor evidenced to have committed a tort against Debbie's Staffing in North Carolina. (See generally Compl. (alleging that only Highpoint and Companion are liable for conversion and breach of fiduciary duty).)

Debbie's Staffing argues that "Defendants" purposefully availed themselves of the privileges of conducting business in North Carolina because "Defendants

22

served as Debbie's insurance agency, producer and claims reporter", "Defendants were to provide workers' compensation and employer's liability insurance for approximately twelve North Carolina locations", "Defendants solicited the payments from Debbie's and provided wire instructions", and "Defendants accepted $804,467.67 from Debbie's as its insurance agency." (Resp. at 7.) Yet, Wood himself is not alleged or evidenced to have done any of these things. (See generally Compl.)

The only evidence of actions that Wood has taken in North Carolina is his filing corporate documents on behalf of Highpoint and AMS Staff Leasing, Inc. These compliance actions are required for the privilege of doing business in the state, which is "quite another" thing than "the actual exercise of that privilege". See Ratliff, 444 F.2d at 748. Furthermore, these are general actions on behalf of the corporation and are, therefore, insufficient for specific jurisdiction over him. Cf. AARP, 604 F. Supp. 2d at 799 ("Whereas general actions by such persons on behalf of the corporation will not generally subject them to an out-of-state court's jurisdiction, [] actions related to the events in question may do so."). Wood does not have the constitutionally required minimum contacts to support the exercise of specific jurisdiction over him.

III.

Companion filed a response to Defendants' motion to dismiss "to make clear that the Wood Defendants are indispensable parties to this litigation – that is, they are ultimately responsible if any of Debbie's Staffing's deposits have been

misappropriated." (Companion's Resp. at 4 [Doc. #23].)  Accordingly, Companion "anticipates seeking total dismissal of this matter in the event that the Court grants" Defendants' motion to dismiss. (Id. at 7.)  Defendants filed a motion to strike Companion's response because, under Local Rule 7.3(f), only respondents may file a response to a motion and Companion is not a respondent to Defendants' motion to dismiss. (See Mot. to Strike at 2.)

Companion has asserted cross-claims against Defendants for conversion, tortious interference, breach of fiduciary duty, and indemnification, (see Answer of Companion, Countercls., & Cross-cls. [Doc. #13]), and, therefore, understandably has a vested interest in this Court's ability to exercise jurisdiction over Defendants. Its response will not be stricken.  Although Defendants request leave to reply to Companion's response in the event its response is not stricken, their request is denied.  Not only does Companion's response bear no relevance to the merits of Defendants' motion, but Defendants have already had the opportunity to reply to the response that did address the merits of their motion.

IV.

For the reasons stated herein, the Motion to Dismiss [Doc. #19] of Defendants Highpoint Risk Services, LLC and Charles David Wood, Jr. is GRANTED for lack of personal jurisdiction over these Defendants.  Their Motion to Strike [Doc. #27] is DENIED.

This the 20th day of April, 2018.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge

24