**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| DEBBIE'S STAFFING SERVICES, INC., )<br><br>Plaintiff, )<br><br>v. )<br><br>HIGHPOINT RISK SERVICES, LLC a/k/a )<br>HIGHPOINT ADMINISTRATIVE )<br>SERVICES, INC., COMPANION )<br>PROPERTY AND CASUALTY )<br>INSURANCE COMPANY n/k/a SUSSEX )<br>INSURANCE COMPANY, and )<br>CHARLES DAVID WOOD, JR., )<br><br>Defendants. ) | 1:17CV657 |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Companion Property and

Casualty Insurance Company's Motion to Dismiss Pursuant to Rule 12(b)(7) [Doc.

#33]. Earlier in this action, it was determined that this Court could not exercise

personal jurisdiction over Defendants Highpoint Risk Services, LLC ("Highpoint") or

Charles David Wood, Jr. (Mem. Op. & Order (Apr. 20, 2018) [Doc. #31].)

Companion Property and Casualty Insurance Company ("Companion") argues that

Highpoint and Wood are necessary and indispensable parties, but because they are

not subject to personal jurisdiction in this Court, the action must be dismissed.

(See Mot. at 1.) For the reasons explained below, the motion is denied.

I.

The following factual allegations are accepted as true and inferences are

drawn in favor of Debbie's Staffing Services, Inc. ("Debbie's Staffing"). 5C Arthur

R. Miller, Mary Kay Kane & A. Benjamin Spencer, Federal Practice and Procedure § 1359 (3d ed. Sept. 2018 Update). Debbie's Staffing, a staffing and personnel placement company, obtained high deductible workers' compensation insurance coverage from Companion and Dallas National Insurance Company ("DNIC"). (Compl. ¶¶ 8, 12, 13 [Doc. #1].) The high deductible insurance policies required Debbie's Staffing to deposit collateral funds with Highpoint to ensure that all claims were paid in the event that Debbie's Staffing failed to fulfill its obligations under the insurance policies. (Id. ¶¶ 13, 14.)

Companion and DNIC used Highpoint as an administrator for collection of premiums and collateral funds for 2012-2014. (Id. ¶ 9.) "As a result," Debbie's Staffing and Highpoint entered into an oral contract according to which Highpoint collected the payments and represented that it would submit the same to Companion and DNIC or safeguard the money for their benefit. (Id. ¶ 10.)

Highpoint managed the process by which Debbie's Staffing deposited collateral funds and instructed Debbie's Staffing how much to pay and where to send the payments. (Id. ¶ 17.) Instructions associated with the 2012-2013 policy were also provided to Debbie's Staffing on Companion letterhead and informed Debbie's Staffing of the collateral payment schedule which required six equal monthly payments of $75,000, the payee (Highpoint), and the mailing address (Companion in Florida). (Id. ¶ 16; Ex. A to Compl. at 2 [Doc. #1-1].) Accordingly, Debbie's Staffing made seven collateral funds wire transfers for policy year 2012-2013, six to Highpoint as the payee and one to International Facilities Insurance

Services, an entity not otherwise alleged to have any relationship to the parties, totaling $450,000, of which $375,000 was paid to Highpoint. (Compl. ¶ 20.)

For the 2013-2014 policy, instructions were provided on DNIC letterhead and informed Debbie's Staffing of the collateral requirement of $400,000 to be paid in six equal installments, the payee (Highpoint), and the mailing address (All Insurance Underwriters, Inc. in Florida). (Id. ¶ 16; Ex. A to Compl. at 3.)  In turn, for the 2013-2014 policy year, Debbie's Staffing made five collateral funds payments, one to Highpoint as the payee for $87,801 and four to Companion for $66,666.66 each, totaling $354,467.67. (Id. ¶ 21.)

Debbie's Staffing believes that Highpoint deposited some or all of these collateral funds into trust accounts under the possession and control of Companion. (Id. ¶ 19; see also id. ¶ 22.)  Pursuant to the terms of the insurance policies and contracts, and because none of the collateral funds was apparently used, Debbie's Staffing demanded their return from Highpoint, Companion, and DNIC, but Highpoint and Companion have disclaimed possession. (Id. ¶¶ 24, 25, 33.)  Accordingly, Debbie's Staffing sued Companion, Highpoint, and Wood, Highpoint's only member, for breach of contract, conversion, unjust enrichment, and breach of fiduciary duty.[1] (Id. ¶¶ 36-53.)  Companion is not only alleged to be responsible for its own conduct, but also for that of Highpoint and DNIC.

---

[1] Debbie's Staffing did not sue DNIC.  It is alleged to have been sold and rebranded as Freestone Insurance Company in 2013 and come under the supervision of the Delaware Department of Insurance in 2014 which elected to liquidate it. (Compl. ¶ 30.)  Debbie's Staffing has made a claim with the receiver. (Id.)

Highpoint is alleged to have acted as an agent for Companion pursuant to Companion's instructions for submission of collateral funds. (Id. ¶¶ 37, 41, 48, 53.)  DNIC is alleged to have acted as an agent for Companion pursuant to Companion's authorization to administer and create trust accounts for Companion's benefit for the deposit of the funds. (Id. ¶¶ 37, 41, 48, 53.) Debbie's Staffing alleges that Highpoint and Companion are jointly and severally liable for the total amount of collateral funds submitted by Debbie's Staffing, (id. ¶¶ 38, 42, 48, 53), and seeks a constructive trust over the funds, (id. ¶ 58).  On April 20, 2018, Highpoint and Wood were dismissed from this action for lack of personal jurisdiction, leaving Companion as the sole remaining defendant. (See Mem. Op. & Order (Apr. 20, 2018) [Doc. #31].)

II.

Companion moves to dismiss pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure – failure to join a party under Rule 19.  See Fed. R. Civ. P. 12(b)(7).  Rule 19 governs joinder of required parties and involves a two-step inquiry.  First, a court must determine if an absent person is required. See Fed. R. Civ. P. 19(a).  Next, if the absent person is required but its joinder is not feasible, the court must determine if, "in equity and good conscience", the action can proceed among the existing parties or must be dismissed because the absent person is indispensable.  See Fed. R. Civ. P. 19(b).  "Only necessary persons can be indispensable, but not all necessary parties are indispensable." Schlumberger Indus., Inc. v. Nat'l Sur. Corp., 36 F.3d 1274, 1285-86 (4th Cir. 1994).

4

"Courts are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result." Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 441 (4th Cir. 1999). A court must analyze the issue "'pragmatically, in the context of the substance of each case, rather than by procedural formula'" and "by considering 'the practical potential for prejudice' to all parties, including those not before it." Id. (quoting Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 119 n.16 (1968) & Schlumberger Indus., Inc., 36 F.3d at 1286).

It is Companion's burden of proof to "show that [Highpoint and Wood are] needed for a just adjudication." Am. Gen. Life & Accident Ins. Co., 429 F.3d at 92 (quoting 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane Federal Practice and Procedure § 1609 (3d ed. 2001)). In determining whether Companion has met its burden, factual allegations in the complaint are accepted as true, inferences are drawn in favor of Debbie's Staffing, and materials outside of the pleadings may be considered. Miller, Kane, & Spencer, supra, § 1359.

A.

An absent person is required if,

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(A), (B).  Companion contends that Highpoint and Wood are required parties pursuant to sections (A) and (B)(i).

1.

Companion argues that Highpoint and Wood are required parties because, without them, Debbie's Staffing cannot be awarded complete relief.  "Complete relief" is relief that "will effectively and completely adjudicate the dispute." 7 Mary Kay Kane, Federal Practice and Procedure § 1604 (3d ed. Sept. 2018 Update) quoted in Pettiford v. City of Greensboro, 556 F. Supp. 2d 512, 518 (M.D.N.C. 2008).

Companion focuses on the allegation, that it describes as "pervasive", "that Debbie's Staffing tendered over $800,000 to Highpoint to be held as collateral pursuant to an oral contract, and Highpoint (or Wood) has taken the money and not accounted for it." (Br. in Supp. at 4 [Doc. #34].)  According to Companion, "all" the claims "derive from an oral contract – the terms of which are unknown to Companion" and, therefore, "cannot be adjudicated without Highpoint (or Wood, as its alter ego) being parties to the case." (Id. at 5-6.)  In addition, Companion contends that it cannot be responsible for Highpoint's collection of collateral on behalf of DNIC and any constructive trust would necessarily include those funds, "making it impossible" to accord complete relief. (Id. at 7.)

Debbie's Staffing first responds that Companion is liable for its own conduct and directs the Court to (1) the allegations that Companion contracted with Debbie's Staffing for workers' compensation insurance coverage and required the

6

deposit of collateral funds, (2) a Companion policy information page attached to the Complaint, (3) a June 15, 2015 email from Companion's Bill Merton attached to a previous filing, (4) the Workers' Compensation and Employers Liability Insurance Policy from Companion attached to its Response Brief, and (5) invoices attached to its Response Brief. (Resp. at 4 [Doc. #36]; Email from Bill Merton to Jeff Williams (June 15, 2015) [Doc. #22-14]; Exs. A & B to Resp. [Docs. #36-1, #36-2].)  Next, Debbie's Staffing contends that because Highpoint is alleged to have acted as an agent for Companion and they are alleged to be jointly and severally liable to Debbie's Staffing, Companion's presence alone is sufficient to accord complete relief. (Id. at 5, 6.)

In its Reply Brief, in relevant part, Companion strongly disagrees with Debbie's Staffing's position and argues that the workers' compensation insurance policy makes no mention of collateral payments and contains a merger clause preventing parol evidence suggesting otherwise, and no allegations support the conclusion that it and Highpoint are jointly and severally liable. (Reply Br. at 2-5 [Doc. #39].)  Throughout its reply, Companion again argues that "every claim asserted by Debbie's Staffing turns on what Highpoint (and Wood, as its alter ego) did with the money that Debbie's Staffing tendered to Highpoint pursuant to the Debbie's Staffing-Highpoint collateral contract", "the terms of which are unknown to Companion". (Id. at 5; see also id. at 3-4.)

It is apparent from Companion's briefing that it believes that it has no liability to Debbie's Staffing for any of the collateral funds, which were, as

7

Companion contends, tendered to Highpoint pursuant to an oral contract to which Companion was not a party and about which Companion knows nothing. If that is the case, a jury could ultimately find in Companion's favor. However, at present, the factual allegations – which are accepted as true, the evidence before the Court, and their reasonable inferences, which are made in the light most favorable to Debbie's Staffing, reveal that Companion has not met its burden to show that Highpoint and Wood are required parties.

Debbie's Staffing requests a judgment for the total amount of the collateral funds. It directly paid Companion $266,666.64 in collateral funds for the policy year 2013-2014, (Compl. ¶ 21), which it can recover from Companion without the presence of Highpoint and Wood.

It also paid Highpoint the remainder of the $804,467.67 in collateral funds, possibly less the $75,000 paid to International Facilities Insurance Services. (Id. ¶ 20.) Companion maintains that Debbie's Staffing cannot be awarded the relief it seeks without Highpoint and Wood.

Companion argues that it is not liable for the funds Highpoint collected on behalf of DNIC. (Br. in Supp. at 7.) Debbie's Staffing did obtain separate workers' compensation insurance coverage from DNIC and Companion because such insurance coverage is state-specific and not every carrier underwrites coverage in every state. (Compl. ¶¶ 11, 12.) DNIC, and not just Companion, used Highpoint as its administrator, and instructions for the 2013-2014 policy were on DNIC letterhead directing Debbie's Staffing to submit collateral payments. (Id. ¶¶ 9, 16.)

8

However, Debbie's Staffing's payments for the 2013-2014 policy year were, in large part, made to Companion, (id. ¶ 21), and Highpoint deposited some or all of those funds into trust accounts under Companion's possession and control, (id. ¶ 19). Furthermore, Companion authorized DNIC to administer and create trust accounts for Companion's benefit for the deposit of collateral funds. (E.g., id. ¶ 37.) At this stage, the allegations are that Companion is responsible for the collateral funds associated with the DNIC insurance policy, and neither Highpoint nor Wood is required to accord this relief.

Companion also argues that Highpoint and Wood are required for the award of collateral funds Highpoint collected on behalf of Companion. (Br. in Supp. at 4-6.) Debbie's Staffing did enter into an oral service contract with Highpoint according to which Highpoint collected payments on behalf of Companion. (Id. ¶ 9). However, it did so because Companion used Highpoint as its administrator for the collection of payments, (id. ¶ 9), and required Debbie's Staffing to deposit collateral funds with Highpoint as part of the high deductive insurance policy, (id. ¶ 13). Illustrative of Companion's role in Highpoint's collection of the collateral funds is an information page on Companion letterhead specifying the six required collateral payments of $75,000 for the 2012-2013 policy year and instructing that checks be made payable to Highpoint and mailed to Companion. (Id. ¶ 16; Ex. A to Compl. at 2.) Highpoint then deposited some or all of the funds into trust accounts under the possession and control of Companion. (Compl. ¶ 19.)

Because this is not an insurance coverage case, Companion takes issue with Debbie's Staffing's position that Highpoint, as Companion's insurance agent, is not a necessary party. (Reply Br. at 5.) Nevertheless, the alleged facts and evidence do support a principal-agent relationship which is one "based upon delegation of authority from the principal to the agent so that the agent is said to be representing the principal". Trivette v. Yount, 735 S.E.2d 306, 308 (N.C. 2012); see also Holcomb v. Colonial Assocs., L.L.C., 597 S.E.2d 710, 716 (N.C. 2004) (providing "two essential ingredients" for the principal-agent relationship – express or implied authority to act for the principal and the principal's control over the agent). "Courts have consistently concluded that an agent or agents need not be joined in a suit seeking to hold the principal vicariously liable." Nationwide Prop. & Cas. Ins. Co. v. Jacobsen, No. 7:14—0516, 2015 WL 6958270, at *2 (W.D. Va. Nov. 10, 2015) (listing cases). Highpoint acted pursuant to instructions from Companion for the payment of collateral funds, and the information page attached to the Complaint suggests as much. Furthermore, to the extent that Companion, Highpoint, and Wood can be held jointly and severally liable to Debbie's Staffing, Highpoint and Wood are not necessary parties. See Fed. R. Civ. P. 19 n. (recognizing "the settled authorities holding that a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability").

Although in further support of its position that Highpoint and Wood are indispensable parties under Rule 19(b), Companion does take issue with the

materials, as well as the interpretation of those materials, upon which Debbie's Staffing relies in its argument that Highpoint and Wood are not required parties. Companion contends that the June 15 email from Companion's Bill Merton regarding the allocation of collateral funds shows that, "[i]n short, Companion had nothing to do with the collateral". (Reply Br. at 6-7.)  It challenges Debbie's Staffing's characterization of documents as invoices from Companion that Debbie's Staffing attached to its Response Brief.  According to Companion, those were issued by Highpoint and indicate payments were for DNIC collateral. (Id. at 7.) However, despite the burden being Companion's, its argument is merely that – argument.  For example, it has submitted no affidavit in support of any of its own interpretations of the evidence. See Miller, Kane, & Spencer, supra, § 1359 (recognizing that "it may be necessary [for the moving party] to present affidavits of persons having knowledge").

Finally, in addition to Debbie's Staffing's request for a judgment for the total amount of the collateral funds, it seeks the establishment of a constructive trust over those funds.  Companion argues that such a constructive trust, in Highpoint's and Wood's absence, is problematic, in part, because it would include the collateral funds collected on behalf of DNIC, for which Companion argues it is not liable. (Br. in Supp. at 7.)

> A constructive trust is a duty, or relationship, imposed by courts of
> equity to prevent the unjust enrichment of the holder of title to, or of
> an interest in, property which such holder acquired through fraud,
> breach of duty or some other circumstance making it inequitable for

him to retain it against the claim of the beneficiary of the constructive trust.

Roper v. Edwards, 373 S.E.2d 423, 424-25 (N.C. 1988) (quoting Wilson v. Dev. Co., 171 S.E.2d 873, 882 (N.C. 1990)).  "On the whole . . . the constructive trust is seen by American courts today as a remedial device, to be used wherever specific restitution in equity is appropriate on the facts."  Id. at 425 (quoting D. Dobbs, Remedies § 4.3 at 246 (1973)).  As noted above, it cannot be determined at this stage that Companion is not liable for the collateral funds collected on behalf of DNIC.  At present, it does not appear that the creation of a constructive trust, even if it were to include all of the collateral funds for which a jury presumably found Companion liable, would be foreclosed.  Therefore, Companion has not shown that, without Highpoint and Wood, Debbie's Staffing cannot be awarded complete relief.

2.

Companion also contends that Highpoint and Wood are required parties because they "[have] an interest in the litigation that will be unprotected in [their] absence." (Br. in Supp. at 4.)  However, the rule actually provides, in relevant part, that a person must be joined if "that person claims an interest relating to the subject of the action . . . ." Fed. R. Civ. P. 19(a)(1)(B) (emphasis added).  Here, neither Highpoint nor Wood has claimed an interest in the subject of this action.  Instead, they essentially disavowed an interest when they were parties to the action and moved to be dismissed.  "Rule 19(a) does not require joinder of an absent party with knowledge of the action who fails to claim an interest in its

12

subject matter." Barnhardt v. Scottsdale Ins. Co., No. 1:13CV637, 2014 WL 98803, at *3 (M.D.N.C. Jan. 9, 2014); see also Am. Gen. Life & Accident Ins. Co. v. Wood, 429 F.3d 83, 93 (4th Cir. 2005) (finding no error where the district court determined that joinder was not required where the absent person had not claimed an interest in the federal action). It is also not sufficient under Rule 19(a)(1)(B) that Companion assert an interest on behalf of Highpoint and Wood. See ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc., 102 F.3d 677, 683 (2d Cir. 1996) (finding that, because "[i]t is the absent party that must 'claim an interest'", the defendant's "self-serving attempts to assert interests on behalf of [the absent party] fall outside the language of [the Rule], and thus cannot be the basis for [the] necessary party argument"). However, as some courts have found, although "[a]n interest does not qualify under Rule 19(a)(1)(B) unless claimed", "the interest referred to in the Rule is not so narrow as to require the non-joined party attempt to intervene, or otherwise raise its interest in the case at bar." Ohio Valley Envtl. Coal., Inc. v. Hobet Mining, LLC, 723 F. Supp. 2d 886, 915 (S.D.W. Va. 2010) (finding that the terms of the absent party's earlier negotiated settlement were "at the heart of this matter" and, therefore, the absent party had "claimed an interest related to the subject of this action"). Here, though, Companion has presented no evidence or argument that Highpoint and Wood otherwise raised an interest in the case at bar.

Nevertheless, Companion characterizes a constructive trust as being "presumably adverse[]" to Highpoint's and Wood's interests and describes these

interests as "alleged interests". (Br. in Supp. at 7.)  Companion is forced to "presum[e]" the basis of its argument because neither Highpoint nor Wood has claimed any interest in the subject of the litigation here.  Furthermore, the establishment of a constructive trust over collateral funds due Debbie's Staffing would be the result of a jury's finding Companion liable for those funds.  If Companion were then compelled to deposit the collateral funds, in whole or in part, into a constructive trust, the source of that deposit would be Companion, not Highpoint and Wood.  Simply put, it is difficult to see how either Highpoint or Wood would have an interest to claim in Companion's own money that it deposits into the constructive trust.

Because neither Highpoint nor Wood is a required party under Rule 19(a)(1)(A) or (B), it is unnecessary to determine if either is indispensable under Rule 19(b).

III.

For the reasons explained herein, IT IS HEREBY ORDERED that Defendant Companion Property and Casualty Insurance Company's Motion to Dismiss Pursuant to Rule 12(b)(7) is DENIED.

This the 16th day of November, 2018.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge